The Peoria and Pekin Union Railway Company

*v.*

The People, *ex rel.* Charles Jaeger, etc.

*Filed at Ottawa, March* 31, 1893.

1. Highway commissioners — *making roads and bridges in incorporated cities and villages — levying tax therefor.* The commissioners of highways, under the act of 1883, section 16 of which was amended in 1889, have no power to engage in the making or improving roads or constructing bridges within the incorporated limits of a city or village, or to make a levy to raise funds to enable them to make improvements in the roads and bridges within such city limits, and any attempt by the commissioners of highways to levy a tax for such a purpose may be enjoined.

2. When a city is organized under a special charter, which gives to it the management, care and control of the streets, highways and bridges within its corporate limits, the commissioners of highways of the town of which the city forms a part have no power to make or improve any highway or bridge in such city, or to interfere with the city in its management and control of the streets, or any improvement to be made in or upon such streets.

3. Same — *extending tax levy for roads and bridges over property in cities and villages.* The commissioners of highways, in levying a road and bridge tax for their town, have the power to extend the levy over the entire town, including property in an incorporated city within such

town, and are not limited to such parts of the town as lie outside of the city limits, unless the charter of such city prohibits the township authorities from levying such tax within the city limits.

4. ROAD AND BRIDGE TAX — *on property in cities and villages — how used.* The road and bridge tax on city property, after it is collected and paid over to the city treasurer, is a fund to be used for road and bridge purposes within the city, and should the city authorities undertake to devote such fund to any other purpose, any tax payer of the city, upon a proper showing, would have the right to enjoin the misappropriation of the fund.

5. SAME — *not a city tax — section* 16 *Road and Bridge law, valid.* The proviso in section 16 of the Road and Bridge law, as amended in 1889, which requires all the road and bridge tax levied and collected within the limits of a city of thirty-five thousand inhabitants or more, shall be paid to the city treasurer "for city purposes," does not render the statute unconstitutional, as such levy is made by the commissioners of highways for road and bridge purposes. The words "for city purposes," as used, are intended to require the tax to be paid to the city treasurer for road and bridge purposes only.

6. CONSTRUCTION OF STATUTES — *purpose considered.* In the construction of a statute courts are not confined to the words used, but may regard the purpose, and, when necessary to give effect to the meaning of the law, words may be rejected and others substituted.

APPEAL from the County Court of Peoria county; the Hon. SAMUEL D. WEAD, Judge, presiding.

Messrs. STEVENS & HORTON, for the appellant:

Commissioners can not collect a road and bridge tax to be expended within the city. Under provisions such as are found in the charter of the city of Peoria the care and charge of the streets and highways within the city are vested in the city authorities exclusively. *County of Cook* v. *G. W. R. R.*, 119 Ill. 223.

Where the city has exclusive control over the streets, the rule that highway commissioners have no authority to levy a road and bridge tax on property within the city does not violate the requirement that all taxes shall be uniform. There is nothing in the present constitution which requires the territorial jurisdiction of a town in respect to taxation for road and

bridge purposes to be uniform or co-extensive with the territorial limits of the town. *Butz* v. *Kerr*, 123 Ill. 659.

The general words of the Road law, including the act of 1883, giving road commissioners powers within their respective towns, are not to be construed as authorizing them to collect a tax to be expended on the streets or bridges within the city. These decisions are in point because this tax is to be expended within the city by the terms of the law itself. It is as much so as if the commissioners had levied it for that express purpose. *Ottawa* v. *Walker*, 21 Ill. 605; *Commissioners, etc.*, v. *Baumgarten*, 41 id. 254; *People* v. *Supervisors*, 111 id. 527; *People* v. *C. & N. W. Ry. Co.*, 118 id. 520; *Snell* v. *Chicago*, 133 id. 440; *Village of Marseilles* v. *Howlin*, 23 Bradw. 107.

The act of 1883 was not intended to modify the provisions of city charters, and the commissioners have no greater power than before the passage of that act. *Butz* v. *Kerr*, 123 Ill. 659.

The law is unconstitutional. If it was intended that the commissioners should levy a tax on property within the city, then the provision that the amount so levied shall be used for city purposes renders the law unconstitutional, because (1) it authorizes the commissioners to levy a tax for other than the corporate purposes of said town; and (2) because it authorizes a tax to be levied for city purposes by other than the corporate authorities of the city. Constitution, art. 9, secs. 9 and 10; · *Wetherell* v. *Divine*, 116 Ill. 631, 635; *Cornell* v. *People*, 107 id. 372; *Weightman* v. *Clark*, 103 U. S. 256; *Snell* v. *Chicago*, 133 id. 440.

The "corporate authorities" intended by the constitution are such municipal authorities as are either directly elected by the people of the municipality, or appointed in some mode to which they had given their consent. *Snell* v. *Chicago*, 133 Ill. 440; *Cornell* v. *People*, 107 id. 372.

The "corporate purpose" intended by the constitution is such purpose as is germain to the object of the creation of the

municipality. *Supervisors* v. *Weider*, 64 Ill. 427; *Trustees* v. *T. W. & W. Ry.*, 63 id. 299; *Sleight* v. *People*, 74 id. 47.

The "city purposes" mentioned in section 16 of the Road law are foreign to the purposes of the commissioners of highways.

Sections 9 and 10 of article 9 of the constitution not only limit local or corporate tax to local or corporate purposes, but were also intended as a limitation upon the power of the legislature. *Harward* v. *Levee, etc., Co..* 51 Ill. 130.

Mr. W. T. Whiting and Mr. Culbertson, for the appellees:

The tax under the constitution was properly extended over the whole town, and all the tax within the city, when collected, is, by the act of 1889, required to be paid over to the city treasurer for city purposes. *Cooper* v. *Ash*, 76 Ill. 11; *Baird* v. *People*, 83 id. 387; *O'Kane* v. *Treat*, 25 id. 557.

The commissioners having authority under the statute to levy a tax within the township of Peoria for road and bridge purposes, the legislature had the power to direct that the money derived from such tax should be put into the city treasury. *Sangamon Co.* v. *City of Springfield*, 63 Ill. 66; *The People, ex rel.*, v. *Power*, 25 id. 187; *Logan County* v. *City of Lincoln*, 81 id. 156; *Coles* v. *County of Madison*, Breese, 154–160.

It was not the intention of the law to confer authority on the commissioners to construct and maintain roads and bridges within the limits of an incorporated city or village. The town authorities have no control over that part of the tax collected from within the limits of a city or village, for it is required to be paid into the city treasury. R. S., chap. 121, secs. 16 and 83; *People* v. *Suppiger*, 103 Ill. 434; *President, etc.*, v. *Rushville*, 32 Ill. App. 320.

The levy by the commissioners of highways of the town "for road and bridge purposes," and also to "liquidate road and ditch damages," is for one of the corporate purposes for

which the town was created, and was legal, and did not contravene any provisions of the constitution of the State.    *Weth-erell* v. *Devine*, 116 Ill. 631 ; *The People ex rel.* v. *Dupuyt*, 71 id. 651–656.

If in the construction of a statute it becomes necessary to reject some of the words of a statute and substitute others in order to arrive at the intention of the legislature, it should be done, if possible, to harmonize the literal meaning of the words used with the true intention of the law maker.    And this will always be done before the courts will declare an act of the legislature void or unconstitutional. *Anderson* v. *C., B. & Q. Ry. Co.*, 117 Ill. 26 ; *The People ex rel.* v. *Hoffman*, 97 id. 234 ; *Perry Co.* v. *Jefferson Co.*, 94 id. 214 ; *Perry* v. *Skinner*, 2 M. & W. 471.

In *Anderson* v. *C., B. & Q. Ry. Co.*, on page 29 in the opinion, the court said : "A thing which is within the letter of the statute is not within the statute, unless it be within the intention of the makers.    4 Bacon's Abr. Stat. 468 (45).    In determining the meaning of a statute we are not confined to its words, but may regard its purposes."

In *The People* v. *Hoffman*, *supra*, on page 237 of the opinion, Mr. Justice Craig said: "In *Walker* v. *City of Springfield*, 94 Ill. 364, it was held that when it becomes necessary to reject one of two words in the statute and to substitute another to give force to the meaning of the law, it should be that which effectuates the legislative intent, and the court should look to the object in view."

Mr. Justice Craig delivered the opinion of the Court :

This was an application at the March term, 1892, of the County Court of Peoria county, for judgment against the property of appellant for delinquent taxes for the year 1891. The facts are undisputed.    Before the hearing of the cause upon the agreed facts appellant filed a number of objections to the various items of taxes assessed against its property as shown

by the delinquent tax list. On June 23, 1892, the County Court entered an order sustaining the objections to all the items of taxes, except the road and bridge tax of the township of Peoria. From this judgment of the court an appeal was taken. The road and bridge tax, extended against appellant's property which is involved in this proceeding, was levied by the commissioners of highways of the town of Peoria, for the year 1891, under the act of 1883, as amended by the act of June 3, 1889, Laws of 1889, page 228. In the stipulation of facts filed on the hearing it was, among other things, agreed that Peoria township embraces within its limits all of the city of Peoria; that there are about seven and one-half miles of highway in said township of Peoria outside the city of Peoria; that in order to raise money enough from the portion of the road and bridge tax to be collected from the property in the township outside the city, to keep in repair the roads in said township outside the limits of the city, the commissioners of highways levied a tax of sixty cents on the $100 for the year 1891.

A proper certificate was made out by the commissioners, filed with the town clerk, and a certified copy forwarded to the county clerk who extended a tax denominated in the tax books as a road and bridge tax for Peoria township of sixty cents on the $100 against the property in the township situated both within and without the limits of the city of Peoria. The tax, as extended against the property of appellant, amounted to $1480.87, of which $1280.62 is against appellant's property situated within the city.

At the time the tax was levied the city contained a population of over thirty-five thousand inhabitants.

That at the time of the levy of said tax, said city of Peoria was organized under a special charter, in force February 20, 1869, but had adopted article 9 of the General City Incorporation law; that among other powers given to said city by said charter were the following:

To control and regulate the streets and alleys, and to remove and abate any obstructions and encroachments thereon.

To control, regulate, repair, amend and clear the streets and alleys, bridges, side and crosswalks, and open, widen, straighten, extend, vacate and name streets and alleys, and establish and alter the grade thereof and prevent the encumbering of the streets in any manner, and protect the same from any encroachment and injury.

To appropriate money and provide for the payment of the debts and expenses of the city.

To establish, erect and keep in repair bridges.

To lay out public streets, alleys, lanes, avenues and highways in said city and extend, repair, widen, construct, straighten and discontinue the same.

To cause any street, alley, lane, avenue or highway to be filled, graded, leveled, paved, curbed and graveled, macadamized or planked, and keep the same in repair.

In the argument of appellant's counsel it is said "these admitted facts present for decision two important questions:

*First.* Did the legislature intend to empower highway commissioners to collect road and bridge taxes within the limits of a city incorporated, as in this case, to be expended within the city limits?

*Second.* Is a law constitutional which provides that the amount realized from the levy of the commissioners on property within the city shall be paid to the city for city purposes; or, in other words, can the legislature, directly or indirectly, empower highway commissioners to levy taxes for city purposes?"

When the levy was made, the act of 1883, in regard to roads and bridges in counties under township organization, was in force, except so far as section 16 of the act had been amended by the act of 1889. The question, therefore, presented involves a construction of the act of 1883, as amended by the act of June 3, 1889. Laws of 1889, page 228.

Section 2 of the act of June 23, 1883, in regard to roads, highways and bridges, provides: "The commissioners of highways shall have charge of the roads and bridges of their respective towns and it shall be their duty to keep the same in repair and to improve them so far as practicable." Section 13 provides: "That the commissioners shall meet semi-annually on the same day and place of meeting as the board of town auditors. At the meeting immediately preceding the annual meeting of the county board the commissioners shall determine what per cent of tax shall be levied on the property of the town for road and bridge purposes and for the payment of any outstanding orders * * * which levy shall not exceed sixty cents on each one hundred dollars." Section 14 provides for a greater levy when needed, in view of some contingency, by and with the consent of the board of town auditors. Section 16, as amended by the act of June 3, 1889, provides: "That the commissioners at the semi-annual meeting shall make a certificate of the rate per cent agreed upon by virtue of sections 13 and 14, which shall be delivered to the town clerk, and the town clerk shall certify the items of levy to the county clerk to be extended as a tax on the collector's book, to be collected as other taxes, and when collected, paid over to the treasurer of the commissioners; provided, that one-half of the tax collected for road and bridge purposes on the property lying within an incorporated village, town or city in which the streets are under the care of the corporation, shall be paid over to the treasurer of such village, town or city, to be appropriated to the improvement of roads, streets and bridges, either within or without said village, town or city, and within the township, under the direction of the corporate authorities of such village, town or city; and provided, that when any of said tax is expended beyond the limits of said village, town or city, it shall be with the consent of the road commissioners of the town; provided, that in all cities of thirty-five thousand inhabitants or upwards, all of said tax required to be levied and collected under said sections 13

and 14 within the limits of said city shall be paid over to the treasurer of such city, for *city purposes.*"

In *Town of Ottawa* v. *Walker*, 21 Ill. 605, where the town of Ottawa in its corporate capacity levied a tax for the purpose of building a bridge in the city of Ottawa, it was held that the city had exclusive control over the streets within its corporate limits, and that the township authorities had no power to levy a tax for the purpose of erecting a bridge within the city. The ruling in this case was approved in *Commissioners of Highways* v. *Baumgarten*, 41 Ill. 254, where a similar question arose. So, also, in *Commissioners of Highways of the Town of Ottawa* v. *The Board of Supervisors of La Salle County*, 111 Ill. 527, on a petition for *mandamus* to compel the county to contribute one-half of the expense of building a bridge over Fox river, it was held that a town has no power to levy and collect a tax for the building of a bridge within the incorporated limits of a city which has itself the power to establish, construct and repair bridges within its own limits. The question again arose in *The People* v. *C. & N. W. Ry. Co.*, 118 Ill. 522, and on the authority of the cases *supra*, the same rule was declared. This case came under the act of 1883, but it will be observed, as stated in the opinion, that "the record shows, and it is a conceded fact, that the tax in question was levied for the improvement of certain roads, a part of each of which lies within an incorporated village in said town."

The foregoing cases have been cited and relied upon to establish the proposition that the commissioners of highways had no power to levy a tax on property within the city limits. But it is apparent that the cases do not go to the extent claimed by counsel. In each one of the cases, as will be seen upon examination, the commissioners were attempting to make an improvement within the incorporated city, and a levy was made to aid them in making such improvement. That is not the case here. The commissioners of highways, as we understand the record, did not attempt to engage in mak-

ing or improving roads or constructing bridges within the incorporated limits of the city of Peoria, nor did they make the levy to raise funds to enable them to go on and make any improvements on the roads and bridges within the city limits. If they had, their action would be condemned by the cases cited. At the time the tax was levied, the city of Peoria was organized under a special charter which conferred upon the city the management, care and control of the streets, highways and bridges within the incorporated limits, and the commissioners of highways had no power to make or improve any highway or bridge in the city, or interfere with the city in its management and control of the streets, or any improvement to be made in or upon such streets. But while this is true, the question remains whether the commissioners of highways in levying a road and bridge tax for and in behalf of the town have the power to extend the levy over the entire township, or are they restricted to such parts of the town as lie outside of a city which may be located in the township.

We find no provision of the charter of the city of Peoria which exempts property lying within the city from taxes authorized under the provisions of the Road and Bridge law of the State, or which prohibits the town in which the city is located from levying a road tax within the city limits; if any such provision existed, that would end the controversy and the case would fall within the rule declared in *Butz* v. *Kerr*, 123 Ill. 659. In the case just mentioned it was held, that the town of Kankakee was not authorized to levy or collect a road tax within the incorporated limits of the city of Kankakee, but there was an express provision in the charter of the city, which prohibited such levy by the town, and the decision of the case was placed on the prohibition contained in the charter. These commissioners were elected by the voters of the entire township of which the city of Peoria was a part. There is no provision in the act under which they levy a road and bridge tax, which empowers them to confine their levy to property outside

of the city limits. Section 13 of the act provides, in plain terms, that the commissioners at the meeting at the time and place of the meeting of the town board, shall determine what per cent of tax shall be levied on the property of the town for road and bridge purposes, etc., which shall not exceed sixty cents on each $100. Section 16 of the Road and Bridge act in R. S., 1874, provided that " the commissioners of highways shall assess a road tax on all real estate and personal property, liable to taxation, of the town, * * * not exceeding forty cents on the $100, * * provided that the tax on property lying within any incorporated village, town or city in which the streets * * * are under the care of the corporation shall be paid to the treasurer of such incorporation, to be appropriated to the improvement of roads, * * * under the direction of the corporate authorities." A tax having been levied and collected under this section of the statute in a township in which the city of Morrison was located, the collector refused to pay the city the tax collected on property lying within its limits, and we held that the city was entitled to collect it ; and in disposing of the case it is said, " Why should the city expect any part of the tax with which to pay damages by reason of the opening, altering or laying out of new roads ? To our minds the answer is obvious. The city is burdened with the entire expense of laying out, improving, repairing, etc., all avenues of travel within its limits, whether they be called streets, boulevards, avenues, alleys or roads or highways, and of constructing and repairing bridges, culverts, etc.; and it was deemed by the legislature to be unjust to burden it also with the expense incident to the public highway system beyond its limits. But the township system frequently necessarily includes cities within the towns, which are created as subdivisions of the counties, and for which commissioners of highways are elected. In levying the taxes the commissioners of highways observe the constitutional mandate of ' uniformity within the jurisdiction of the body imposing the same,' and

thus extended the tax alike within as beyond the city limits throughout the town, but when collected, that arising from the property within the city is to be used within the city, and that from property beyond its limits is to be used beyond its limits."

If the law of 1874 is valid, and a levy under it upon all property within the township authorized, upon the same principle and for the same reason, a levy under the act of 1883 on the property of the entire township must be sustained. In *Cooper* v. *Ash*, 76 Ill. 17, although the question presented in the last case cited was not involved, the same reasoning is used.

But it will be observed that at the time the levy was made, the city of Peoria contained within its incorporated limits over thirty-five thousand inhabitants, and hence all that part of the road and bridge tax collected within the city would be controlled by the last proviso of section 16, if valid. It is, however, insisted in the argument: " If it was intended that the commissioners should levy a tax on property within the city, then the provision that the amount so levied shall be used for city purposes renders the law unconstitutional, because (1) it authorizes the commissioners to levy a tax for other than the corporate purposes of said town ; and (2) because it authorizes a tax to be levied for city purposes by other than the corporate authorities of the city."

It may be conceded that a tax can only be levied for city purposes by the corporate authorities of the city, and that the commissioners of highways cannot levy a tax for other than corporate purposes of the township. But the levy here involved was for road and bridge purposes, and that such a purpose is a corporate purpose for which the town was created can not be questioned or denied. The real question, however, is whether the language of the proviso in section 16, which declares that the tax required to be levied and collected within the limits of the city shall be paid over to the treasurer of the city for city purposes, renders the tax a city tax. We do not regard that as the proper construction to be placed on the lan-

guage of the proviso. In order to determine the intention of the legislature in the enactment of the proviso, the different provisions of section 16, and the remaining portions of the act of 1883 must all be considered. ˙ The first part of section 16, as amended, declares : " The commissioners, at said semi-annual meeting, shall make a certificate of the rate per centum finally agreed upon by virtue of sections 13 and 14 of this act ; also the amount to liquidate road and ditch damages, and shall cause such certificate to be delivered to the town clerk." By going back to section 13, referred to, it declares : " The commissioners shall meet, etc. * * * At the meeting immediately preceding the annual meeting of the county board, the commissioners shall determine what per cent of tax shall be levied on the property of the town for *road* and *bridge purposes,* and for the payment of outstanding orders drawn by them on the treasurer, which shall not exceed sixty cents on each $100." These provisions, which confer the power to make the levy, show the object and purpose for which the levy is made ; and that purpose is for road ·and bridge purposes, payment of orders, and to liquidate road and bridge damages, and nothing else. There is here no intimation that the tax or any part of it is levied as a city tax to be devoted to city purposes. Keeping, therefore, in view these provisions of the statute which lie at the foundation of the levy, the construction to be placed upon the language of the last clause of the proviso is obvious ; that is, the words, "for city purposes," were intended to require the tax to be paid to the city treasurer for road and bridge purposes. The tax, after it is collected and paid over to the city treasurer, is a fund to be used for road and bridge purposes within the city, and should the authorities of the city undertake to divert the fund to any other purpose, any tax payer of the city, upon a proper showing, would have the right to enjoin the misappropriation of the fund. In the construction of a statute, courts are not confined to the words used, but may regard the purpose, and when necessary to give effect to the meaning

of the law, words may be rejected and others substituted. *Perry County* v. *Jefferson County*, 94 Ill. 214; *The People* v. *Hoffman*, 97 id. 234; *Anderson* v. *C., B. & Q. R. R. Co.*, 117 id. 26.

The judgment of the County Court will be affirmed.

*Judgment affirmed.*

MAGRUDER, J.: I do not concur.